**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

DAMARIS ACEVEDO-TORRES,

    Plaintiff,

      v.                          **Civil No. 11-2195 (GAG)**

MUNICIPALITY OF ARECIBO,

    Defendant.

## OPINION AND ORDER

Damaris Acevedo-Torres ("Plaintiff") brings this action against Municipality of Arecibo ("Defendant"), alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146 *et seq.*

Presently before the court is Defendant's motion to dismiss (Docket No. 11). Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff opposed the motion (Docket No. 16). By leave of the court, Defendant filed a reply to Plaintiff's opposition motion (Docket No. 19). After reviewing these submissions and the pertinent law, the court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss at Docket No. 11.

**I.    Legal Standard**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), defendants may move to dismiss an action failure to state a claim upon which relief can be granted. See FED.R.CIV.P. 12(b)(6). To survive a Rule 12(b)(6) motion, a

1   complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its

2   face." Twombly, 550 U.S. at 570.  The court must decide whether the complaint alleges sufficient

3   facts to "raise a right to relief above the speculative level." Id. at 555.  In so doing, the court accepts

4   as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v.

5   Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of

6   the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556

7   U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

8   conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  "[W]here the

9   well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

10  complaint alleged –but it has not show[n]– that the pleader is entitled to relief." Iqbal, 556 U.S. at

11  679 (quoting FED.R.CIV.P. 8(a)(2)) (internal quotation marks omitted).

12  **II.     Factual and Procedural Background**

13          The court derives the following allegations from the complaint (Docket No. 1).  Plaintiff

14  worked for Defendant as a municipal police officer.  (See id. at 2 ¶ 7.)  Her shift began at four in the

15  morning and ended at twelve noon.  (See id. at 2 ¶ 8.)  Plaintiff was assigned to provide security, by

16  herself, at the Manuel Petaca Iguina Coliseum ("Coliseum")[1] on March 11, 2010.  (See id.)  During

17  her morning commute that day, Plaintiff received a phone call from fellow police officer Jose L.

18  Martinez-Vargas ("Martinez-Vargas"), inquiring whether she was assigned to the Coliseum post that

19  particular morning and whether he could stop by to talk.  (See id. at 2-3 ¶ 8.)  Martinez-Vargas was

---

[1] Manuel Gilberto Iguina Reyes was born in Arecibo, Puerto Rico on June 23, 1923.  He served in the United States Army during World War II, and thereafter worked for the U.S. Postal Service in Arecibo and subsequently, in the nearby Municipality of Manati as its Postmaster General until 1982.  He is best remembered, however, for his athletic prowess: an outstanding baseball player and boxer, but foremost, a basketball player despite his 5'6" stature.  He is the only individual in the history of Puerto Rico basketball to have owned, coached and played for the same team simultaneously, the Arecibo Capitanes (Captains).  He is known as the "Capitán de Capitanes."  At a young age he was nicknamed by a relative "Petaca" which in Spanish means a short, squat person.  The Arecibo Coliseum, inaugurated in the early 2000s was named in honor of Manuel "Petaca" Iguina.  It is a state of the art facility which can seat 10,000 spectators, and is home to the Arecibo Capitanes, who in said venue, have won the Puerto Rico Superior League Basketball Championship in 2005, 2008, 2010 and 2011.

1   already at the Coliseum upon Plaintiff's arrival.  (See id. at 3 ¶ 9.)

2        According to the complaint, while conversing about police matters, Martinez-Vargas told

3   Plaintiff he was "very horny" because he was separated from his wife and had not had sex for

4   months.  (See Docket No. 1 at 3-4 ¶ 13.)  Martinez-Vargas paused the conversation and went to his

5   car because his pants and belt were bothering him.  (See id.)  He returned wearing his policeman's

6   shirt, jacket, black shorts and socks, but without his boots.  (See id. at 4 ¶ 14.)  Plaintiff was four feet

7   away from Martinez-Vargas when she noticed "he had taken his penis out and was playing with

8   himself."  (See id. at 4 ¶ 15.)  Plaintiff jumped up from where she was sitting and asked Martinez-

9   Vargas what he was doing.  He responded by asking whether he could masturbate in front of her.

10  (See id. at 4 ¶ 16.)  According to the complaint, Plaintiff responded "are you crazy[?]" and ran inside

11  the Coliseum's ticket office yelling at him to leave.  (See id. at 4 ¶ 16.)  When officer Martinez-

12  Vargas did not leave, Plaintiff "took the safety from her gun belt."  (See Docket No. 1 at 4 ¶ 17.)

13  Martinez-Vargas "then moved behind the door of the room where [Plaintiff] had been hiding."  (See

14  id.)  He asked Plaintiff "if she had seen his penis and if it was big."  (See id. at 4-5 ¶ 17.)  Plaintiff

15  continued to yell at Martinez-Vargas, instructing him to leave.  (See id.)

16        As Martinez-Vargas was leaving in his car, another police officer, Sergeant Avila ("Avila"),

17  arrived at the Coliseum's premises and asked Martinez-Vargas why he was there if he was not on

18  duty.  (See id. at 5 ¶ 18.)  At that time, Plaintiff did not report the recent events because of Avila's

19  close relationship with Martinez-Vargas' father, who was a sergeant on the State police force.  (See

20  id. at 5 ¶ 19.)  After Plaintiff's shift was over, she was picked up and taken to the precinct.  (See

21  Docket No. 1 at 5 ¶ 20.)  Plaintiff called fellow police officer Nancy Candelaria ("Candelaria") and

22  told her, "in a coded manner so as not to alert the other two officers in the car[,]" of the incident with

23  Martinez-Vargas.  (See id.)  Candelaria informed Plaintiff that this incident was not a first for

24  Martinez-Vargas.  (See id. at 5 ¶ 21.)  Plaintiff alleges an administrative investigation later

25  concluded Martinez-Vargas had, in fact, performed in a similarly lewd manner with four other

26  female police officers.  (See id. at 7-8 ¶ 31.)

27        Once at the precinct, the two police officers who rode with Plaintiff from the Coliseum and

28  overheard her conversation with Candelaria inquired as to what had happened.  (See id. at 5-6 ¶ 22.)

Plaintiff recounted the events that transpired earlier. (See id. at 6 ¶ 23.)  The two officers informed

Avila of what occurred. (See Docket No. 1 at 6 ¶ 23.)  Plaintiff, herself, later recounted the incident

with Martinez-Vargas to Avila and Sergeant Victor Concepcion ("Concepcion").  (See id. at 6 ¶¶

23-24.)  The state police was called.  They took Plaintiff's statement and charges were subsequently

filed against Martinez-Vargas. (See id. at 6 ¶ 24.)  Plaintiff's firearm was taken away.  (See id.)

Plaintiff was instructed to report to the State Insurance Fund ("SIF") for treatment.  (See id.

at 6 ¶ 25.)  Following seven months of psychiatric and psychological treatment, Plaintiff was

discharged from the SIF.  She sought unpaid medical leave from Defendant.  (See id. at 6-7 ¶¶ 25-

26.)  Plaintiff's request for unpaid leave was denied, and Plaintiff was not given a reason.  (See

Docket No. 1 at 7 ¶ 26.)  Plaintiff was then instructed to either report back to work or be terminated

from her duties with the Municipal Police.  (See id. at 7 ¶ 27.)

The Human Resources Office of the Municipality informed Plaintiff she could resign on or

before December 21, 2010 and receive a $6,000 compensation.  (See id. at 7 ¶ 28.)  Plaintiff chose

to resign.  (See id. at 7 ¶ 29.)  Plaintiff has since been diagnosed with severe depression and has been

deemed impaired by the Social Security Administration.  (See id. at 7 ¶ 30.)

Plaintiff filed a claim of discrimination with the Equal Employment Opportunity

Commission ("EEOC"), and the corresponding Right to Sue letter was issued by said agency on

October 14, 2011.  (See id. at 8 ¶ 32.)

**III.    Discussion**

Title VII prohibits employers from discriminating "against any individual with respect to

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  There are various types of

actionable sexual harassment claims under Title VII: *quid pro quo* harassment claims, hostile work

environment claims, and retaliation claims.  See Valentin-Almeyda v. Muncipality of Aguadilla, 447

F.3d 85, 94 (1st Cir. 2006).  Plaintiff's complaint sets forth hostile work environment and retaliation

claims.  Defendant moves to dismiss both.  (See Docket No. 11.)

**A.      Hostile Work Environment**

To state a viable Title VII hostile work environment claim, a plaintiff must sufficiently

**Civil No. 11-2195 (GAG)**                   5

allege:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

See Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 228 (1st Cir. 2007) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).  Defendant moves to dismiss Plaintiff's hostile work environment claim by arguing the conduct at issue amounts to a single, isolated act, which is not severe enough as a matter of law to establish a *prima facie* case under Title VII.  (See Docket No. 11 at 3-7.)  The court disagrees and notes the alleged harassment must be "severe or pervasive," not both.  An isolated event may create a hostile work environment if it "extremely serious."  Rivera-Martinez v. Commonwealth of Puerto Rico, No. 05-2605, 2007 WL 16069, at *3 (1st Cir. Jan. 04, 2007) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).  Hostile work environment harassment "occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment for them."  Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 897 (1st Cir. 1988).  The alleged conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)) (internal quotation marks omitted).  "The Court's function is to screen and determine whether or not, on particular facts, a reasonable jury could reach such a conclusion."  Martinez v. Eagle Global Logistics, No. 09-2265(PG), 2011 WL 3843918, at *16 (D.P.R. Aug. 26, 2011) (citing Noviello v. City of Boston, 398 F.3d 76, 94 (1st Cir. 2005)).

In the present complaint, Plaintiff alleges that, while on duty by herself, in the early hours of the morning, a male co-worker showed up at her assigned post, whipped out his penis, played with his penis, asked if he could masturbate in front of her and asked whether she thought his penis was big.  The complaint further alleges four other female police officers had been subject to Martinez-Vargas' lewd behavior.  Plaintiff's awareness that Martinez-Vargas had performed similar

lewd conduct for other female co-workers is relevant to Plaintiff's reasonable perception of a hostile work environment.  Plaintiff alleges the harassment resulted in her not working for seven months due to a psychological condition, until she ultimately decided to resign.  At the motion to dismiss stage, the court draws all reasonable inferences in Plaintiff's favor and finds that she has plead sufficient factual allegations pertaining to the severity of the harassment.

Defendant further argues the complaint lacks sufficient facts to establish employer liability.  (See Docket No. 11 at 7-9.)  Under Title VII, employers are vicariously liable for a non-supervisory co-worker when the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action."  Forrest, 511 F.3d at 231 (citations omitted) (internal quotation marks omitted).  The instant complaint alleges Martinez-Vargas was a fellow police officer who had previously performed similar lewd conduct for other female police officers.  It is plausible that Defendant knew or should have known of the harassment and failed to respond promptly and appropriately.  Although Plaintiff's claim might not be successful on the merits, it does survive the motion to dismiss stage.  Accordingly, the court **DENIES** Defendant's motion to dismiss Plaintiff's Title VII hostile work environment claims.

### B.    Retaliation

Next, Defendant argues that Plaintiff's retaliation claim must also be dismissed because Plaintiff failed to exhaust the corresponding administrative remedies.  (See Docket No. 11 at 9-11.)

Before an employee may sue in federal court on a Title VII claim, he [or she] must first exhaust administrative remedies."  Franceschi v. U.S. Dep't of Veteran Affairs, 514 F.3d 81, 85 (1st Cir. 2008) (citing Love v. Pullman Co., 404 U.S. 522, 523 (1972)).  "The Title VII administrative process begins with the filing of an administrative charge before the EEOC."  Franceschi, 514 F.3d at 84.  The purpose of filing an administrative charge as a prerequisite to commencing a civil action is to provide defendants "with prompt notice of the claim and to create an opportunity for early conciliation."  Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

"A claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies."  Franceschi, 514 F.3d at 86.  In Clockedile v. New Hampshire Dep't of Corr., the First Circuit held that "retaliation

claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency –e.g., the retaliation is for filing the agency complaint itself." 245 F.3d 1, 6 (1st Cir. 2001).  The fact that a retaliation claim may be preserved even though a plaintiff failed to exhaust the administrative requirement indicates "the First Circuit's concern with retaliatory conduct . . . which arises after, if not as a result of, an employee's invocation of the EEOC process." Munoz Rivera v. Walgreens Co., 428 F. Supp. 2d 11, 22 (D.P.R. 2006) (quoting Kenney v. MML Investors Servs., 266 F. Supp. 2d 239, 245-46 (D. Mass. 2003)) (internal quotation marks omitted).

　　　　"The rule does not, however, provide a plaintiff with an unlimited license to extend his [or her] claim endlessly beyond the bounds and parameters encompassed by the administrative charge." Thornton, 587 F.3d at 32. "Where the retaliatory act is claimed to have occurred prior to the filing of a charge . . . and the plaintiff fails to allege a retaliation claim in the subsequent charge, the retaliatory act will not reasonably relate to the charge." Velazquez Rivera v. Danzig, 81 F. Supp. 2d 316, 327 (D.P.R. 2000) (citing Seymore v. Shawver & Sons, Inc., 111 F.3d 794 (10th Cir. 1997)), aff'd in part, 234 F.3d 790 (1st Cir. 2000). see Johnson v. Cleveland City Sch. Dist., 344 Fed. Appx. 104, 110 (6th Cir. 2009) ("As a rule, we have found that retaliation does not reasonably grow out of a substantive claim of discrimination if the retaliation occurred before the EEOC charge was filed."); Ndondji v. InterPark, Inc., 768 F. Supp. 2d 263, 279 (D.D.C. 2011) (holding that discrimination and retaliation claims are considered distinct types of claims that must be raised independently if the retaliation occurred prior to the filing of the administrative charge); Crooks v. Wal-Mart Stores of Texas, LLC, No. 4:09-CV-259-A, 2009 WL 2422330 at *2 (N.D. Tex. Aug. 05, 2009) (finding that although administrative remedies need not be exhausted prior to filing a retaliation claim growing out of a previously filed EEOC charge, "exhaustion is required where the alleged retaliatory acts occurred before filing the charge."); Houston v. Army Fleet Servs., LLC, 509 F. Supp. 2d 1033, 1044 (M.D. Ala. 2007) (holding that if the alleged retaliatory action occurs before the initial EEOC charge is filed, "a plaintiff must exhaust his administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the retaliation claim."); Wilson v. Palmer House Hilton, No. 02 C 8980, 2005 WL 1041319 at *16 (N.D. Ill. Apr.

29, 2005) (finding that a retaliation claim is outside the scope of the charge when the facts supporting the claim occurred before the EEOC charge was filed).

In the present case, Plaintiff alleges to have filed a timely charge of sexual harassment discrimination before the EEOC. (See Docket No. 1 at 8 ¶ 32.)  Retaliation was not included in her EEOC charge.   Instead, Plaintiff argues she need not include her retaliation claim in the administrative charge because it "is directly related to the sexual harassment that she alleges to have been a victim of." (See Docket No. 16 at 18.)  This is not so.  Plaintiff alleges she was denied unpaid medical leave in retaliation for complaining to her supervisors of the incident with Martinez-Vargas. (See Docket No. 16 at 17-18.)  The complaint reads in chronological order.  Even taking all allegations as true, the alleged retaliatory action occurred prior to the filing of the EEOC complaint and as such, should have been included in the administrative charge.  If she had alleged that she was retaliated against for filing the EEOC charge, then the retaliation claim might survive.

Because the alleged retaliatory conduct occurred prior to the date on which Plaintiff filed her EEOC charge, she was required to include facts about the retaliation claim in the charge if she wished to later litigate such a claim.  To hold differently would basically exempt all retaliation claims from Title VII's exhaustion of administrative remedies requirement.  Accordingly, the court **GRANTS** Defendant's motion to dismiss Plaintiff's Title VII retaliation claim and **DISMISSES** the same.

## C.    Puerto Rico Law 100

Finally, Defendant moves to dismiss Plaintiff's Law 100 claims as these do not apply to municipalities.  Law 100 is the Puerto Rico anti-discrimination statute.  See P.R. Laws Ann. tit. 29, § 146.  It prohibits an employer from discriminating against an employee in the workplace by reason of age, race, color, religion, sex, social or national origin or social condition.   See id.  Notwithstanding Plaintiff's allegations against Defendant, Law 100 does not apply to municipalities or municipal employees.  Marin-Piazza v. Aponte-Rogue, 873 F.2d 432, 436 (1st Cir. 1989); Perez-Gonzalez v. Municipality of Añasco, 769 F. Supp. 2d 52, 65 (D.P.R. 2010).  Accordingly, Plaintiff's Law 100 claim against Defendant is **DISMISSED**.

## IV.    Conclusion

For the reasons set forth above, the court **GRANTS in part and DENIES in part**

**Civil No. 11-2195 (GAG)**                              9

Defendant's motions to dismiss at Docket No. 11.  Plaintiff's Title VII retaliation and Law 100

claims are hereby **DISMISSED**.  Remaining before the court is Plaintiff's Title VII hostile work

environment claim.

      **SO ORDERED**.

      In San Juan, Puerto Rico this 25th day of April, 2012.

                                    *S/Gustavo A. Gelpí*

                                    GUSTAVO A. GELPÍ

                              United States District Judge